**18 MAG 8520** ORIGINAL

Approved: _____
NOAH FALK
Assistant U.S. Attorney

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :   **SEALED COMPLAINT**
                                    Violations of 18 U.S.C.
        - v. -                   :   §§ 1349, 1028A.

ANTONIO DIMARCO, and            :   COUNTY OF OFFENSE:
JOAKIM VON DITMAR                   NEW YORK
                                :
        Defendants.
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER McKEOGH, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Wire Fraud Conspiracy)

1. From in or about at least November 2017, through at least in or about January 2018, in the Southern District of New York and elsewhere, ANTONIO DIMARCO and JOAKIM VON DITMAR, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, DIMARCO and VON DITMAR, using the identity of a particular victim, attempted to purchase a work of art at a New York, New York-based auction house in part through the provision of false financial documentation and stolen identification information.

2. It was a part and an object of the conspiracy that ANTONIO DIMARCO and JOAKIM VON DITMAR, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349.)

## COUNT TWO
### (Aggravated Identity Theft)

3. From in or about at least November 2017, through at least in or about January 2018, in the Southern District of New York and elsewhere, ANTONIO DIMARCO and JOAKIM VON DITMAR, the defendants, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, DIMARCO and VON DITMAR stole, and aided and abetted the theft of, personal information, including names and bank account numbers, in connection with the wire fraud conspiracy charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), (c)(1) & 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent for approximately 15 years. I have been assigned to the Major Theft squad since 2014. In connection with my assignment to the Major Theft Squad, I specialize in investigations concerning art theft and art fraud, and have participated in other investigations concerning financial crimes, mail fraud, wire fraud, and money laundering.

5. I make this Affidavit in part on personal knowledge based on my participation in the investigation and conversations with other FBI Special Agents, and other law enforcement officers; conversations with witnesses and victims of the offenses described herein; and reviews of reports and other documents prepared by agents and others.

6. Throughout this Affidavit, where I assert that a statement was made, I was not the individual to whom the statement was made unless I specifically so state. Rather, information about the statement was provided by the specified law-enforcement officer or other individual (who may have had either direct or indirect knowledge of the statement) to whom I have spoken or whose reports I have read and reviewed. Such statements are set forth in substance and in part, unless otherwise indicated.

7. Furthermore, the facts and circumstances of this investigation have been summarized for the specific purposes of this Application. I have not attempted to set forth the complete factual history of this investigation or all of its details. In making this application, I rely only on the facts stated herein.

8. From my conversations with, and review of reports by, another FBI agent involved in this investigation, including reports regarding the interview of a retiree who resides in both Bal Harbour, Florida and West Chester, New York ("Victim-1"), I have learned, among other things, that:

   a. In or about 2014, Victim-1 hired ANTONIO DIMARCO, the defendant, to perform construction and design work on Victim-1's Bal Harbour residence.

   b. In or about October or November 2017, DIMARCO and Victim-1 discussed attending a fine art auction at an auction house in Manhattan (the "Auction House"). DIMARCO showed Victim-1 a letter that, DIMARCO explained, would provide Victim-1 and DIMARCO access to the auction at the Auction House, which was not otherwise open to the public. Victim-1 signed the letter at DIMARCO's instruction, without reading or reviewing it. Victim-1 believed that the letter was a formality to obtain access to the auction.

   c. Victim-1 stated that DIMARCO worked with an individual named "Joakim," later identified as JOAKIM VON DITMAR, the defendant, who procured fine art for DIMARCO's decorating commissions, and that Victim-1 had overheard DIMARCO and VON DITMAR discussing the procurement of fine art on a number of occasions.

   d. Victim-1 never attended an auction at the Auction House. In or about December 2017 or January 2018, Victim-1 received a telephone call from an employee of the Auction House

3

("Employee-1"). Employee-1 asked Victim-1 if Victim-1 had purchased any art works during auctions at the Auction House in November 2017. Victim-1 stated that Victim-1 had never purchased any art works from the Auction House. Subsequently, Victim-1 called DIMARCO and informed DIMARCO about the call from Employee-1. DIMARCO told Victim-1 not to be concerned about the call, and Victim-1 and DIMARCO did not discuss the matter further. Victim-1 stated that aside from the call from Employee-1, Victim-1 was not otherwise contacted by the Auction House.

        e.    Victim-1 stated that DIMARCO had never purchased art works at Victim-1's direction, or on Victim-1's behalf, and that Victim-1 was not an art collector. Victim-1 further stated that DIMARCO was not authorized to buy any works of art using Victim-1's money at the Auction House, and that even when DIMARCO discussed attending the auction at the Auction House with Victim-1, Victim-1 was only interested in observing the proceedings, and had no intention of purchasing any works of art at the Auction House. Victim-1 also stated that while DIMARCO may have had access to Victim-1's passport, as Victim-1 kept it in her residence, and DIMARCO was often there with free access to the residence, DIMARCO did not have Victim-1's permission or authority to use Victim-1's passport for any purpose, including in connection with the purchase of any art works.

        f.    When asked about a company called Empire Equity Investments, LLC ("EEI"), Victim-1 stated that, although Victim-1 believed that DIMARCO was affiliated with a company called EEI, Victim-1 did not know what EEI's business was, and stated that Victim-1 was not involved in the management of EEI or have a business partnership with DIMARCO or EEI.

    9.    I have reviewed business records maintained by the Auction House relating to auctions held on November 16, 2017, and November 17, 2017, including an invoice dated January 23, 2018, reflecting the sale of an untitled painting by the artist Mark Rothko ("Lot A") at auction on November 16, 2017, for the purchase price of $6,437,500.00 to EEI and Victim-1.

    10.    I have further reviewed an invoice maintained by the Auction House dated January 23, 2018 reflecting the sale of a painting entitled "No. 12" by the artist Ad Reinhardt ("Lot B") at auction on November 17, 2017, for the purchase price of $1,155,000.00 to EEI and Victim-1.

    11.    I have reviewed correspondence maintained by the Auction House relating to the purchase of Lot A and Lot B,

4

including a letter bearing what purports to be Victim-1's signature, dated November 15, 2017, on EEI letterhead, stating in relevant part that Victim-1 authorized DIMARCO to bid on Victim-1's behalf, and on behalf of EEI, in the November 2017 auctions (the "Authorization Letter"). The Authorization Letter lists Lot A and Lot B as items on which DIMARCO is authorized to bid.

12. I have reviewed a letter on the letterhead of a New York, New York-based bank ("Bank-1") maintained in the Auction House's records, dated November 16, 2017, stating that the signatory of the letter has managed Victim-1's Bank-1 accounts for over 20 years, and that Victim-1 "currently has the ability and liquidity to make a cash purchase in the amount of $7,000,000 if [Victim-1] wishes to do so" (the "Bank-1 Letter").

13. I have reviewed an email message maintained in the Auction House's records, dated November 15, 2017, sent from "joakimvonditmar@[domain].com" (the "VON DITMAR Account") and addressed to an Auction House employee.[1] In the email, JOAKIM VON DITMAR, the defendant, wrote, with respect to the November 16, 2017 auction, that ANTONIO DIMARCO, the defendant, was "also a part of Empire Equity LLC" and that DIMARCO "will do the bidding on the phone." VON DITMAR further wrote that Victim-1 "has issued a letter of authorization as well, stating [DIMARCO] may bid. I will merely be in the room telling him/them on the other phone what is going on in the room."

14. I have reviewed a second email message sent from the VON DITMAR Account to an employee of the Auction House, forwarding a message sent from an email account controlled by DIMARCO (the "DIMARCO Account") on November 15, 2017, and attaching the Bank-1 Letter, the Authorization Letter, and articles of incorporation for EEI listing "Antonio DiMarco" and Victim-1 as "Manager(s) of the LLC."[2]

---

[1] From my review of contents of the VON DITMAR Account, I have learned, among other things, that JOAKIM VON DITMAR, the defendant, controls the VON DITMAR Account. Among other things, the VON DITMAR Account contains images of a passport depicting JOAKIM VON DITMAR, the defendant.

[2] From my review of contents of these emails and others provided by the Auction house, I have learned, among other things, that ANTONIO DIMARCO, the defendant, controls the DIMARCO Account. For example, I have reviewed photographs of U.S. passports issued to ANTONIO DIMARCO, the defendant, and to Victim-1,

15. I have reviewed additional email correspondence among Auction House employees, the DIMARCO Account, and the VON DITMAR Account, from which I have learned, among other things, that as of at least January 24, 2018, the Auction House had not received payment for Lots A and B. DIMARCO, using the DIMARCO Account, offered a variety of excuses to the Auction House as to why payment was delayed, including asserting that DIMARCO was waiting for a trust to be set up, from which he would receive $500 million. Subsequently DIMARCO wrote that funds from the trust would be sent to DIMARCO's offshore Hong Kong accounts, from which DIMARCO would pay the outstanding balance for Lot A and Lot B to the Auction House.

16. I have interviewed an employee of the Auction House, from whom I have learned that, as a result of non-payment by DIMARCO and EEI, the Auction House incurred losses in excess of $5 million, because the Auction House was contractually obliged to pay the seller of Lot A and Lot B upon completion of the sales, despite not receiving payment itself.

17. From my review of the VON DITMAR Account, as well as documents from more than ten additional auction houses and art galleries, other than the Auction House, I have learned, among other things, that JOAKIM VON DITMAR, the defendant, using the VON DITMAR Account has attempted to obtain works of art in collaboration with ANTONIO DIMARCO, the defendant, using Victim-1's financial information and identity on at least three occasions, including the scheme relating to the Auction House described above; each attempt was unsuccessful, ultimately, due to the failure of DIMARCO and VON DITMAR to secure actual funds to complete a purchase. Moreover, even after the failed attempt to obtain Lots A & B from the Auction House, VON DITMAR represented to an auction house other than the Auction House the following:

    a. "[A financial advisor] confirmed that the documents required for the opening of the bank accounts were submitted to [a foreign bank ("Bank-2")] today. He has no more information for now, in reference to how fast and also how much funds can be moved as we unfortunately are dealing with a 13hr time difference with [Bank-2] in Hong Kong unfortunately [sic]."

---

attached to email correspondence provided to the Auction House by DIMARCO using the DIMARCO Account.

        b.   "I am not sure how much information I have shared with you in regard to the size of this trust and foundation? Approximately $1bill [sic] have been set aside by the client through his Hong Kong holding company for the sole purpose of acquiring art and building a very important international art collection."

        c.   "With me alone they have [sic] so far already acquired art for $98.422.000 [sic], that includes your invoice(s) and they have committed to another $118mill for a few select works. That does not include a $41mill Rothko, a $30mill Picasso and a $32mill Basquiat and several other works that I do not even know what they are that they have acquired separately and also need to be paid for."

        d.   "[I]t will still be [EEI] that will pay you."

WHEREFORE, I respectfully request that ANTONIO DIMARCO and JOAKIM VON DITMAR, the defendants, be arrested, and imprisoned or bailed, as the case may be.

_____
CHRISTOPHER MCKEOGH
Special Agent
Federal Bureau of Investigation

Sworn to before me this
5th day of October, 2018

_____
HON. DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York