UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :

UNITED STATES OF AMERICA

                :

   - v. -                                    18 Cr. 863 (VEC)

                :

ANTONIO DIMARCO,

                :

      Defendant.

                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S REPLY SENTENCING MEMORANDUM

                                                      GEOFFREY S. BERMAN
                                                      United States Attorney for the
                                                       Southern District of New York
                                                       One St. Andrew's Plaza
                                                       New York, New York 10007

Tara LaMorte
Abigail S. Kurland
Assistant United States Attorneys
   *-- Of Counsel --*

**Preliminary Statement**

The Government respectfully submits this Reply Memorandum in advance of the sentencing of defendant Antonio DiMarco ("the Defendant") scheduled for June 2, 2020. In the defendant's sentencing submission, and in his statements to the mitigation specialist and to the Probation Officer, DiMarco claimed that he did not receive his ▮▮▮▮▮▮ for a significant period of time to his detriment. Based on the records discussed below, this accusation is false. Accordingly, not only should the Court not give weight to this assertion when it conducts its Section 3553(a) analysis, rather, this false claim further demonstrates why a Guidelines sentence is appropriate.

**Statement of Facts**

In connection with his request for a sentence of time served, or in the alternative, a sentence of 24 months' imprisonment, DiMarco cites, among other factors, ▮▮▮▮▮

[1] Because this Reply Memorandum discusses the defendant's medical history, the Government respectfully requests that it be permitted to file the portions of it that discuss his medical history under seal.

███████████

In response to the defendant's sentencing memorandum, the Government reviewed his medical records, attached as Ex. A, and spoke with an attorney with the BOP (the "Attorney"). According to the Attorney, the partial power outage DiMarco refers to occurred from January 27, 2020, through February 3, 2020. Furthermore, the Attorney explained that during this time-period, ███████████ this is consistent with DiMarco's medical records.

███████████

███████████





## Discussion

---

[2] "MIM" stands for Miami, "ATL" stands for Atlanta, "OKL" stands for Oklahoma, and "MDC" stands for the Brooklyn Metropolitan Detention Center, all of which were federal penal institutions that housed DiMarco from his arrest on or about November 8, 2019 through present.



(1) "Item" lists the name of the medication; (2) "Compl" measures the percentage of compliance with taking the medication; (3) the chart also lists the date of the last refill; and (4) the quantity of medication dispensed. According to Attorney-1, the "Compl" column quantifies compliance with medication in relation

to when the inmate asks for a refill as measured from the start of a prescription. For example, 100% compliance indicates that an inmate asked for a refill on the day his prescription finished; greater than 100% compliance means that an inmate asked for a refill before the prescription finished (130% is the highest possible compliance percentage because the pharmacy will refill prescriptions only up to five days early); and less than 100% means that the refill request was made after the prescription finished. If, however, the inmate has leftover pills from a prior prescription there would be no gap in his ability to self-administer his medication

7



should not result in a 50% reduction in his sentence, assuming the Court were otherwise inclined to sentence DiMarco at the bottom on the Guidelines Range.

Furthermore, and particularly concerning to the Government, is that this brand of self-serving lies and exaggerations are the type of behavior employed by DiMarco in connection with his crimes. This leads to the inference that DiMarco has not learned his lesson and is willing to lie to the Court in order to receive a lower sentence. Accordingly,

a Guidelines sentence remains necessary to promote respect for the law, deter DiMarco, and to protect the public from DiMarco's schemes.

Finally, the Government also notes that while the defendant is correct that his prior federal conviction is old, this does not mean that deterrence and incapacitation are not an issue in this case.  In 1999, the FBI interviewed DiMarco in connection with his access device fraud conviction. (PSI ¶¶ 60-63.)  In addition to opening lines of credit in his uncle's name, DiMarco admitted to several other crimes, including: (1) providing false tax forms to a bank and overstating his income in an attempt to secure a $60,000 loan, and (2) providing false information to a company in connection with his attempts to procure to two loans. (PSI ¶¶ 61-62.)

In connection with the bank loan, DiMarco falsely represented that he had computer equipment that he could use as collateral and that he had a $7 million dollar trust fund that was overseas that he had trouble accessing. (PSI ¶ 61.)  DiMarco also told the bank that his uncle, who was the victim of the access divide fraud, would serve as a cosigner.  This was also a lie.  Likewise, with the other two business loans, DiMarco told the lender that he had a bank account in the Cayman Islands and he falsified bank statements to reflect the same using his computer. (PSI ¶ 62.) Falsifying documents, creating fake bank documents, making up foreign bank accounts and using the identifies of victims to secure loans and other things of value are exactly the type of the illicit behavior DiMarco engaged in to perpetuate his wire fraud scheme in this case.  From this the Court can infer that little has changed between the late 1990s and today.  Accordingly, a Guidelines sentence is also appropriate to incapacitate DiMarco, promote respect for the law, and deter DiMarco from engaging in these schemes and incurring a third federal conviction.

## **Conclusion**

For the foregoing reasons, the Government continues to advocate for a sentence within the Guidelines Range of 63 to 78 months' imprisonment because it would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

DATED:   May 26, 2020
         New York, New York

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney

                    By:       /s/
                            Abigail S. Kurland
                            Assistant U.S. Attorney
                            Southern District of New York
                            Tel. (212) 637-2955